26CA0323 Peo in Interest of JLM-G 07-23-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 26CA0323
City and County of Denver Juvenile Court No. 24JV30973
Honorable Lisa Gomez, Judge

---

The People of the State of Colorado,

Appellee,

In the Interest of J.L.M-G., a Child,

and Concerning J.A.G.,

Appellant.

---

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE MEIRINK
Pawar and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

---

Miko Brown, City Attorney, Amy J. Packer, Assistant City Attorney, Denver, Colorado, for Appellee

Josi McCauley, Guardian Ad Litem

The Morgan Law Office, Kristofr P. Morgan, Colorado Springs, Colorado, for Appellant

¶ 1    J.A.G. (father) appeals the judgment terminating his parent-child legal relationship with J.L.M-G. (the child).  We affirm.

## I.    Background

¶ 2    Denver Human Services (the Department) filed a petition in dependency or neglect because the child was born exposed to substances and based on a history of domestic violence between the parents.  Father was incarcerated at the time the Department filed the petition.  The Department placed the child with maternal grandfather, where the child remained.

¶ 3    Father entered a no-fault admission, and the juvenile court adjudicated the child dependent and neglected.  The court then adopted a treatment plan for father.

¶ 4    The Department subsequently moved to terminate father's parental rights.  Following a hearing held over fourteen months after the case opened, the court terminated father's parental rights.

## II.    Less Drastic Alternatives

¶ 5    Father's sole contention on appeal is that the juvenile court erred by finding that there were no less drastic alternatives to termination, such as an allocation of parental responsibilities (APR) to maternal grandfather.  We disagree.

1

### A. Standard of Review and Applicable Law

¶ 6    We review a juvenile court's findings regarding less drastic alternatives for clear error. *People in Interest of A.M. v. T.M.*, 2021 CO 14, ¶¶ 15, 44. It is for the juvenile court, as the trier of fact, to determine the sufficiency, probative effect, and weight of the evidence and to assess witness credibility. *People in Interest of A.J.L.*, 243 P.3d 244, 249-50 (Colo. 2010).

¶ 7    A juvenile court may terminate parental rights if it finds, by clear and convincing evidence, that (1) the child was adjudicated dependent or neglected; (2) the parent has not reasonably complied with an appropriate, court-approved treatment plan or the plan has not been successful; (3) the parent is unfit; and (4) the conduct or condition of the parent is unlikely to change within a reasonable time. § 19-3-604(1)(c), C.R.S. 2025.

¶ 8    Before terminating parental rights under section 19-3-604(1)(c), the juvenile court must consider and eliminate less drastic alternatives. *People in Interest of L.M.*, 2018 COA 57M, ¶ 24. In considering less drastic alternatives, a court must give primary consideration to the child's physical, mental, and emotional conditions and needs. § 19-3-604(3); *see L.M.*, ¶ 29.

¶ 9     For a less drastic alternative to be viable, it must do more than "adequately" meet a child's needs; rather, the less drastic alternative must be the "best" option for the child. *A.M.*, ¶ 27. If the court considers a less drastic alternative but finds instead that termination is in the child's best interests, it must reject the less drastic alternative and order termination. *Id.* at ¶ 32.

¶ 10     In deciding whether a relative placement is a viable less drastic alternative to termination, a juvenile court may consider, among other things, (1) whether an ongoing relationship with the parent would benefit the child, *People in Interest of A.R.*, 2012 COA 195M, ¶ 38; and (2) whether the caregiver favors adoption over an APR, *People in Interest of S.N-V.*, 300 P.3d 911, 920 (Colo. App. 2011).

¶ 11     Additionally, when a child is under six years old, as here, the juvenile court must consider the expedited permanency planning provisions, which require that the child be placed in a permanent home as expeditiously as possible. *See* §§ 19-1-102(1.6), 19-1-123, 19-3-702(5)(c), C.R.S. 2025.

## B. Analysis

¶ 12      The juvenile court considered an APR to maternal grandfather as a less drastic alternative but concluded that termination was in the child's best interests. *See A.M.*, ¶ 32. The court found that there was conflict between mother's and father's families and that "[m]iring [the child] in a situation where he spends his life in and out of court is not in his best interest."

¶ 13      The court's findings are not clearly erroneous. The caseworker testified that father was not supposed to "engag[e]" with mother because of a protection order, but there were "continuing concern[s] of contact that was violent in nature . . . ." The caseworker also testified that the relationship between maternal grandfather and paternal grandmother was strained. And father testified that he would "always fight to be there" for the child, "even if [he] ha[d] to take this to court again."

¶ 14      Father argues that he attended family time and had a relationship with the child, thus an APR would have been in the child's best interests because it would have preserved their relationship. The caseworker testified that father only attended six family time sessions during the case. The last time father saw the

child was seven months before the termination hearing. The caseworker explained that father did not engage with the child, was "not around to understand [the child's] individual needs," and did not "build that relationship that kids need for health attachment." The caseworker opined that because of father's lack of participation and maternal grandfather's preference for adoption over an APR, there were no less drastic alternatives, and termination was in the child's best interests.

¶ 15 Ultimately, the record supports the juvenile court's conclusion that there were no less drastic alternatives to termination. Because the record supports the court's findings, we must affirm its judgment. *See People in Interest of B.H.*, 2021 CO 39, ¶ 81

### III. Disposition

¶ 16 The judgment is affirmed.

JUDGE PAWAR and JUDGE SULLIVAN concur.